IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JESSICA DOE, an individual proceeding
under a pseudonym,

                Plaintiff,

      v.

ST. HELENS SCHOOL DISTRICT, an
Oregon Public School District, authorized and
chartered by the laws of the State of Oregon;
ST. HELENS SCHOOL DISTRICT BOARD,
an Oregon corporate body authorized and
chartered by the laws of the State of Oregon;
SCOT STOCKWELL, individually and in his
official capacity; and TED ZEHR,
individually and in his official capacity,

                Defendants.

Case No. 3:19-cv-01728-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

       Plaintiff Jessica Doe ("Doe") filed this action against the St. Helens School District (the

"District"), the St. Helens School District Board (the "School Board"), District Superintendent

Scot Stockwell ("Stockwell"), and St. Helens High School Principal Ted Zehr ("Zehr")

(together, "Defendants"). Doe asserts constitutional claims under 42 U.S.C. § 1983, 20 U.S.C. §

PAGE 1 – OPINION AND ORDER

1681 ("Title IX"), and state law claims for negligence, sexual battery of a child, and intentional infliction of emotional distress ("IIED"). (ECF No. 41.) Now before the Court is Defendants' motion for partial summary judgment. (ECF No. 45.)

The Court has jurisdiction over Doe's claims pursuant to 28 U.S.C. §§ 1331 and 1367, and all parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636. For the reasons discussed below, the Court grants in part and denies in part Defendants' motion for summary judgment.

## BACKGROUND[1]

### I.    WROBLEWSKI'S HISTORY WITH THE DISTRICT

Beginning in 1998, Kyle Wroblewski ("Wroblewski") worked as a teacher at Springfield High School, where he met his future (now ex) wife, at the time a seventeen-year-old high school senior. (Decl. of Stephen Crew Supp. Pl.'s Opp'n Defs.' Mot. Summ. J. ("Crew Decl.") ¶ 3, Ex. 2, Depo. Kyle Wroblewski ("Wroblewski Depo.") at 11:5-6, 12:17-24.) During the 1999-2000 academic year, Wroblewski began teaching social studies and history at St. Helens High School ("SHHS"). (Id. at 13:24-14:11.) While at SHHS, Wroblewski was an assistant football coach, junior varsity ("JV") basketball coach, JV baseball coach, and girls basketball coach. (Id. at 14:14-22.) From 2004 until his arrest in May 2018, Wroblewski also coached track and field. (Id. at 14:20-15:2.)

In 2005, a female student complained that Wroblewski had acted inappropriately. (Crew Decl., Ex. 12, Depo. Nanette Hagen ("Hagen Depo.") at 48:4-10.) No one at SHHS or the District took any immediate action against Wroblewski in response to the allegation, which

---

[1] Unless otherwise noted, the following facts are either undisputed or viewed in the light most favorable to Doe.

Wroblewski characterized as having been made by a "disgruntled" female student. (*See id*. at 44:15-19.)

In December 2007, another student reported that Wroblewski made sexual comments and inappropriate jokes in class, and that Wroblewski had rubbed the shoulders of a female student for several minutes while the rest of the class worked on an assignment. (*See* Crew Decl., Ex. 4.) In April 2008, following an investigation into the student's allegations, then-administrator Joanna Rau, now Joanna Tobin ("Tobin"), summarized in a letter (the "Conference Letter") a discussion she had with Wroblewski about his conduct. (*Id*.)

The Conference Letter summarized sixteen "situations" related to Wroblewski's relationship with students and noted that Wroblewski did not deny any of the student's allegations, but instead had offered "clarification" and "context" and asked SHHS administrators for help. (*Id*.) As a result of the investigation, Wroblewski received a "Letter of Directive" from SHHS administrators "addressing the District's expectations concerning [Wroblewski's] relationships with students" including, *inter alia*, that he was to have no physical contact with students, must avoid touching students' hair, commenting on their clothes, or telling students that their perfume smelled delicious, and that students were not allowed around his desk or computer space. (Crew Decl., Ex. 5.)

Wroblewski's inappropriate behavior did not stop. After he received the Letter of Directive, more than twenty additional students reported to SHHS administrator B.G. Aguirre ("Aguirre")—who took over Tobin's role as SHHS assistant principal in July 2008—that Wroblewski was acting inappropriately. (Crew Decl., Ex. 14, Depo. B.G. Aguirre ("Aguirre Depo.") at 8:16-18, 17:17-22.) One of the allegations was that Wroblewski had inappropriately

touched J.E., a female student, track athlete, and his student aide.[2] (*See* Hagen Depo. at 27:9-28:2, 29:19-20.) Despite Wroblewski's earlier directive to have no physical contact with students, several people witnessed Wroblewski massaging J.E.'s hamstring and groin behind a track shed. (*See id*.) After being questioned by an SHHS administrator, J.E. and Wroblewski both confirmed the incident had occurred but denied it was sexual in nature. (*See id*. at 29:9-10.)

Following this incident, then-Principal Nanette Hagen ("Hagen") reported Wroblewski's conduct to the Teacher Standards and Practices Commission ("TSPC"), and verbally recommended to then-Superintendent Patricia Adams ("Adams") that she fire Wroblewski. (*Id*. at 26:4-8.) Hagen believed Wroblewski was "exhibiting grooming-type behavior" and by physically touching J.E. in that manner, he had "crossed the line[.]" (*Id*. at 25:23-26:5.) Adams did not terminate Wroblewski, despite Hagen's recommendation. (*See id*. at 35:7-10.)

Over the next year, Wroblewski continued his inappropriate conduct, resulting in SHHS administrators having "around ten" conversations with Wroblewski and culminating in Hagen formally reprimanding Wroblewski in a letter ("Letter of Reprimand") in April 2009. (*Id*. at 18:22-19:1, 659:14-60:10; Crew Decl., Ex. 7.) Hagen testified that when she spoke to Wroblewski about his continued inappropriate conduct, he said he "didn't know how to stop" and "was struggling with it." (*Id*. at 60:2-18.) In the Letter of Reprimand, Hagen states that "following an investigation into alleged inappropriate conduct," she "came to the understanding that the allegations were indeed true[.]" (Crew Decl., Ex. 7.) The Letter of Reprimand described multiple conversations between Hagen and Wroblewski where Wroblewski "admitted . . . that the behavior had occurred[.]" (*Id*.) Hagen described Wroblewski as having "created a sexually

---

[2] The Court uses initials to protect this non-party minor's identity.

hostile environment in [his] classroom and [that he had] not maintained appropriate professional boundaries" with students. (*Id*.)

Hagen suspended Wroblewski for three days for violating the earlier Letter of Directive and warned Wroblewski that any further violation would result in termination.[3] (*Id*.) Hagen also relieved Wroblewski of his responsibilities as track coach because, in her view, "it left too many opportunities for him to be . . . unsupervised with students."[4] (Hagen Depo. at 61:9-15.) Hagen viewed this as necessary because Wroblewski "was demonstrating a pattern of behavior that he couldn't discern what was an appropriate teacher/student relationship and boundary." (*Id*. at 61:19-22.) Hagen also indicated that Adams "w[ould] be filing a report to TSPC[.]" (*Id*.)

Wroblewski subsequently filed a grievance related to the formal reprimand. (*See* Crew Decl., Ex. 8.) In denying Wroblewski's grievance, Hagen explained that her investigation substantiated allegations that he had, *inter alia*, discussed sexual positions with a female student and was privately texting a female student. (*Id*. at 2.) Hagen characterized Wroblewski's conduct as "sexual harassment of students" and informed Wroblewski that his conduct "has the effect of unreasonably interfering with a student's educational performance[,] . . . creates an intimidating, hostile, [and] offensive educational environment" and that his conduct "violates state and federal law[.]" (*Id*.) Hagen concluded by informing Wroblewski that he was "to stop this type of behavior immediately and permanently, period." (*Id*.)

---

[3] Wroblewski's suspension was reduced from three days to one day following a meeting between Wroblewski, his union representative Tonya Arnold ("Arnold"), and Adams. (*See* Wroblewski Depo. at 37:6-38.)

[4] It is unclear from the record whether Wroblewski was ever relieved of his track coaching responsibilities. However, an employment contract demonstrates that Wroblewski was employed as a track coach in August 2009. (Crew Decl., Ex. 61.)

On May 5, 2009, Adams sent Wroblewski a list of expectations related to his inappropriate conduct, including, *inter alia*, that Wroblewski was not to "have physical contact with students[,]" make "sexual" comments, "touch students' hair[,]" make comments about how students smell, and that he was not to "allow students around [his] desk . . . unless . . . assisting them with a classroom assignment." (Crew Decl., Ex. 9.) Despite imposing these conditions on Wroblewski, SHHS administrators did not "follow-up[,]" "monitor[,]" "watch[,]" or "check[] in" with Wroblewski to ensure he no longer had inappropriate contact with female students. (Crew Decl., Ex. 3, Depo. Scot Stockwell ("Stockwell Depo.") at 57:10-15.)

In 2015, Stockwell replaced Adams as District Superintendent. (*Id*. at 9:16-20.) Upon Stockwell's hiring, Aguirre, who by then was Principal of SHHS, informed Stockwell of Wroblewski's past inappropriate behavior toward female students and that Wroblewski was not "safe[,]" and raised concerns that the athletic director was failing properly to supervise Wroblewski's interactions with students.[5] (*Id*. at 36:17-25, 37:-21.) According to Stockwell, however, when he became Superintendent in 2015, he did not have any conversations about any teachers who were a "concern." (Stockwell Depo. at 74:1-9.)

## II.    DOE'S HISTORY WITH WROBLEWSKI AND THE DISTRICT

Doe began attending SHHS in 2015 when she was fourteen years old. (Decl. Jessica Doe ("Doe Decl.") ¶ 1.) Doe did well in school, got good grades, and was well-liked. (*Id*. ¶ 3.) Doe first interacted with Wroblewski in his role as a track coach when she was a freshman in the

---

[5] Aguirre eventually resigned from SHHS because "she didn't like working for [Stockwell because h]e was a good ol' boy; he was a student [at SHHS]; he was an athletic director; he was friends with all these good ol' boys, all the coaches . . . [and] when [Stockwell] came in, [Aguirre] lost all credibility with all these good ol' boys because they had a direct line to [Stockwell], and I felt it was a hostile work environment." (Aguirre Depo. at 34:15-35:8.)

winter of 2016. (Crew Decl., Ex. 1, Depo. Jessica Doe ("Doe Depo.") at 61:24-62:1.)

Wroblewski approached Doe, complimented her athletic prowess, and encouraged other athletes

to model themselves after her. (Doe Decl. ¶ 4.) Wroblewski was a chaperone at Doe's first

school dance, where he complimented Doe on her appearance. (Doe Depo. at 86:18-25.)

Doe had a troubled home life, and over the break between her freshman and sophomore

years, the troubles intensified. (*See, e.g.*, *id*. at 61:3-61:17.) Doe also suffered an injury that

summer, which prevented her from running on the SHHS track team during her sophomore year.

(*See id*. at 60:15-17.) Doe still attended practices and track meets to encourage her teammates,

and as a result she spent a lot of one-on-one time with Wroblewski. (*See id*. at 64:17-65:12,

66:19-23.) Wroblewski began encouraging Doe to confide in him, and acted "warm, caring, and

supportive." (Doe Decl. ¶ 4.) Wroblewski encouraged Doe to "share more and more personal and

eventually intimate information with him." (*Id*.)

Doe's struggles with her injury and home life continued and Doe became anxious and

depressed. (*See* Doe Depo. at 70:22-71:1, 130:17-131:1.) In the spring of her sophomore year,

Doe disclosed to Wroblewski that she was having suicidal thoughts. (*Id*. at 75:20-25.) Around

that time, Wroblewski gave Doe his personal cell phone number. (*Id.* at 84:7-85:22; Wroblewski

Depo. at 65:15-17.) Wroblewski began texting Doe to check in on her. (Wroblewski Depo. at

56:17-20.) SHHS teachers, counselors, and administrators, including Stockwell, were aware of

Doe's struggles. (*See* Crew Decl., Exs. 44, 47.)

Over the summer before her junior year, Doe and Wroblewski continued to have one-on-

one contact. They would go on runs together, text often, Doe would meet Wroblewski alone in

his classroom at his request to assist on projects, and Wroblewski bought Doe a gift. (*See* Doe

Depo. at 76:2-3, 87:15-23, 89:7-17, 93:24-95-20.) Wroblewski also encouraged Doe to register

for two of his classes, and to request to be his teaching assistant ("TA") for both classes. (Wroblewski Depo. at 78:11-17.) SHHS officials approved Doe to be Wroblewski's TA. (*See* Doe Depo. at 212:18-25; *see also* Stockwell Depo. at 70:9-22, testifying that for a student to be approved as a TA, "a counselor or somebody in administration" would have to "sign off" on it.) In addition, Wroblewski was assigned as Doe's academic advisor and homeroom teacher and remained her track coach. (Wroblewski Depo. at 88:7-13; Crew Decl., Ex. 34.)

During her junior year, SHHS teachers, coaches, counselors, and administrators, including Stockwell, were aware that Doe continued to struggle with depression, anxiety, self-harm, suicidal ideation, and panic attacks. (*See, e.g.*, Crew Decl., Ex. 29, Depo. Megan Cox at 38:25-42:14, 63:14-24; Crew Decl., Ex. 30, Depo. Naomi Reedy at 34:6-17; Crew Decl., Ex. 37, Depo. Heather Anderson-Bibler at 27:9-28:8; Crew Decl., Exs. 33, 44-45.) It was understood among teachers, counselors, and administrators at SHHS that Wroblewski was Doe's "safe person." (*See* Wroblewski Depo. at 74:18-75:1, 76:8-9, testifying that "one of [Doe's] safe zones was for her to be able to come to my room and there was an understanding that . . . this was something she was allowed to do.") Accordingly, other faculty members would inform Wroblewski when Doe was struggling in class, sought Wroblewski out to assist when it was discovered Doe was self-harming, and would call Wroblewski to assist when Doe had panic attacks at school. (*See, e.g.*, Crew Decl., Ex. 80, email from teacher to Wroblewski acknowledging that Wroblewski was "a 'safe' person" for Doe and informing Wroblewski that Doe was struggling in a math class; Wroblewski Depo. at 52:1-3, 58:12-21, 60:24-61:1; Doe Decl. ¶ 5.) School counselors repeatedly involved Wroblewski in Doe's counseling sessions. (Wroblewski Depo. at 57:3-58:18; Doe Decl. ¶ 5; Crew Decl., Ex. 45, session notes from school counselor Anderson-Bibler detailing a counseling session with Doe and Wroblewski about Doe's

self-harming behaviors.) Doe would frequently leave other classes to go to Wroblewski's room and would sit at his desk while he taught or oftentimes would make a "nest" and sleep under his desk. (Wroblewski Depo. at 76:16-77:3; Doe Decl. ¶ 8.) School officials and students observed these interactions. (Doe Decl. ¶ 8.) Doe and Wroblewski continued to grow increasingly close. (*Id*. ¶ 9.)

Wroblewski eventually told Doe that he was interested in her sexually. (*Id*. ¶ 10.) This left Doe feeling "extremely confused" because she "had been thinking of [] Wroblewski as a role model, coach, teacher, mentor, and father-like figure." (*Id*.) Wroblewski began engaging Doe in sexual conversations and began to introduce physical contact into their relationship, including rubbing her shoulders in class and hugging her at school where she could "tell he had an erection." (*Id*. ¶ 11.)

In mid-October 2017, Wroblewski and Doe's relationship turned sexual. (*See* Wroblewski Depo. at 103:17-25; Crew Decl., Ex. 51 at 35.) At Wroblewski's suggestion, he and Doe had phone and text sex several times between October and November 2017. (Crew Decl., Ex. 51 at 36; Doe Depo. at 102:20-103:3.)

In November 2017, on SHHS grounds, Wroblewski performed oral sex on Doe. (Doe Decl. ¶ 12; Doe Depo. at 103:23-25.) Wroblewski had sexual intercourse with Doe several times beginning in December 2017. (Doe Depo. at 108:14-24.) Shortly thereafter, while on Christmas break, Wroblewski's wife, also a teacher at SHHS, discovered Wroblewski's texts with Doe. (*Id*. at 111:4-18.) In response, Wroblewski told Doe they could not talk anymore, and Doe was left "sitting [] crying because I didn't know what to do." (*Id*. at 111:19-23.)

When school began again, Wroblewski's wife began texting Doe encouragement before her races and would glare at Doe in the hallway, which left Doe feeling "like shit" and "weird."

(*Id*. at 113:22-25.) Wroblewski had sex with Doe a total of "ten times" from January 2018 to April 2018. (*Id*. at 114:2-7.) While the sexual abuse was ongoing, Doe continued to self-harm and have suicidal thoughts. (*See, e.g.*, *id*. at 71:4-14, 116:2-8, 129:1-3, 129:25-130:2.)

On May 1, 2018, Wroblewski was home from school. (*Id*. at 116:13-16.) Doe was also not in school that day and went to Wroblewski's house in the early afternoon. (*Id*. at 116:17-117:6.) A state trooper who lived across the street witnessed Doe enter Wroblewski's house. (*Id*.) The state trooper immediately reported what he suspected was abuse to the St. Helens Police Department. (Crew Decl., Ex. 49.) Wroblewski had sex with Doe, and she then left his house and went home. (Doe Depo. at 118:1-5.) Shortly thereafter, the state trooper went to Doe's home with a St. Helens police officer. (Crew Decl., Ex. 49.) The state trooper informed Doe that he had seen where she was earlier in the day and asked, "how much sleep [she] had lost over it." (*Id*. at 118:13-19.) Doe responded "[s]o much, I don't sleep anymore." (*Id*.) Wroblewski was arrested shortly thereafter.

Doe was "pretty suicidal at that point" and did not return to school for the remainder of the school year. (*Id*. at 129:25-130:6.) On May 2, 2018, the District placed Wroblewski on paid administrative leave. (Decl. Karen Vickers Supp. Defs.' Mot. Summ. J. ("Vickers Decl."), Ex. 13.) Doe returned to SHHS for her senior year, but after Wroblewski's sexual abuse of Doe became public, Doe claims SHHS "did not take any active measures to integrate [Doe] back into the school community or to regularly check-in with [Doe] about any negativity or retaliation [Doe] faced." (Doe Decl. ¶ 16.)

## STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). On a motion

for summary judgment, the court must view the facts in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of that party. *See Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 891 (9th Cir. 2005). The court does not assess the credibility of witnesses, weigh evidence, or determine the truth of matters in dispute. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (simplified).

## DISCUSSION

Doe asserts the following claims: (1) Defendants violated her Fourteenth Amendment right to substantive due process based on a state-created danger theory, and (2) *Monell* liability; (3) Stockwell and Zehr violated her Fourteenth Amendment right to substantive due process based on supervisory liability; (4) the District and School Board violated her rights under Title IX based on deliberate indifference to sexual discrimination, harassment, and abuse, and (5) failure to take remedial or corrective action; (6) Defendants were negligent; (7) Defendants are liable for twelve counts of sexual battery of a child under a *respondeat superior* theory; and (8) Defendants are liable for IIED under a *respondeat superior* theory. (*See generally* First Am. Compl. ("FAC"), ECF No. 41.) Doe seeks compensatory and punitive damages for all of her claims. (*Id*. ¶¶ 45-46.)

## I.    PRELIMINARY PROCEDURAL MATTERS

Defendants move to dismiss Doe's claims of sexual battery of a child and IIED against Stockwell and Zehr, and to dismiss Doe's claim for punitive damages under state law. (Defs.' Mot. at 19.) At oral argument, Doe's counsel agreed that these claims should not proceed.

Accordingly, the Court dismisses Doe's state law claims against Zehr and Stockwell for sexual

battery of a child and IIED, and dismisses Doe's claim for punitive damages under state law.

Defendants also argue that Doe has abandoned several claims by failing to respond to

arguments in Defendants' motion for summary judgment. (*See* Defs.' Reply Supp. Mot. Summ.

J. ("Defs.' Reply") at 3.) In their motion, Defendants argue, *inter alia*, that the Court should enter

summary judgment on (1) Doe's claims against the School Board because the School Board "is

not an entity separate from the District subject to suit[,]" (2) Doe's request for punitive damages

on her Section 1983 claims, and (3) Doe's federal claims against Zehr and Stockwell in their

official capacities. (Defs.' Mot. Summ. J. ("Defs.' Mot.") at 7, 19.)

Doe did not respond to Defendants' arguments in her opposition brief. At oral argument,

Doe's counsel informed the Court that Doe did not intend to concede these claims. Doe's counsel

also argued that punitive damages are available against Stockwell and Zehr in their individual

capacities under Section 1983, but agreed that punitive damages are not available for Doe's

Section 1983 claims against the District. Doe's counsel did not otherwise respond substantively

to Defendants' arguments.

Courts in the Ninth Circuit consistently hold that a party's failure to address an issue in

response to a motion for summary judgment is an abandonment of that claim. *See Yentz v. Nat'l*

*Credit Adjusters, LLC*, No. 3:20-cv-01364-AC, 2021 WL 1277961, at *5 (D. Or. Feb. 15, 2021)

(collecting cases), *findings and recommendation adopted*, 2021 WL 1270457 (D. Or. Apr. 6,

2021); *see also Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (finding

that the plaintiff "abandoned her . . . claims by not raising them in opposition to [the defendant's]

motion for summary judgment"); *see also Lykins v. Hohnbaum*, No. CIV. 01-63-JO, 2002 WL

32783973, at *3 (D. Or. Feb. 22, 2002) (finding the plaintiff's failure to "promote or defend" a

claim in response to the defendant's motion for summary judgment was a concession of the claim).

The Court finds that—with the exception of the Section 1983 punitive damages claims against Zehr and Stockwell in their individual capacities—Doe has failed meaningfully to respond to several of Defendants' grounds for summary judgment despite a second opportunity to do so at oral argument. Doe has therefore abandoned those claims.

Accordingly, the Court grants Defendants' motion for summary judgment on (1) Doe's claims against the School Board, (2) Doe's Section 1983 claims against Zehr and Stockwell in their official capacities, and (3) Doe's claims for punitive damages under Section 1983 against the District.

## II.    DEFENDANTS' MOTION

Defendants move for summary judgment on Doe's Title IX claims against the District, Doe's Section 1983 claims against the District, and Doe's Section 1983 claims against Zehr and Stockwell in their individual capacities. (*See generally* Defs.' Mot.) For the reasons discussed below, the Court grants in part and denies in part Defendants' motion for summary judgment.[6]

### A.    Title IX Claim

Doe alleges that the District violated Title IX because it was deliberately indifferent to sexual discrimination, harassment, and abuse despite "known circumstances," and it failed to take remedial or corrective action in aid of Doe following Wroblewski's arrest in May 2018. (*See* FAC ¶¶ 92, 102.)

---

[6] Because the Court does not enter summary judgment on all of Doe's federal claims, the Court does not address Defendants' argument that the Court should decline to exercise supplemental jurisdiction over Doe's state law claims. (*See* Defs.' Mot. at 20.)

Under Title IX, no "person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefit of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]" 20 U.S.C. § 1681(a). To prevail on a Title IX claim, Doe must show that the District (1) had actual knowledge of and (2) was deliberately indifferent to (3) harassment "on the basis of sex" that was so severe, pervasive, and objectively offensive that it (4) deprived the plaintiff of access to the education benefits or opportunities the District provided. *See T.L. ex rel. Lowry v. Sherwood Charter Sch.*, 68 F. Supp. 3d 1295, 1308 (D. Or. 2014) (citing *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 644-45 (1999)). "In sexual harassment cases, it is the deliberate failure to curtail known harassment, rather than the harassment itself, that constitutes the intentional Title IX violation." *Mansourian v. Regents of Univ. of Cal.*, 602 F.3d 957, 967 (9th Cir. 2010).

With respect to Doe's first Title IX claim, Defendants argue that they are entitled to summary judgment because (1) "[t]here is no evidence that an 'appropriate person' had actual knowledge that Wroblewski[] was harassing or sexually abusing [Doe]" and (2) the District was not deliberately indifferent because "as soon as the District learned of [Doe's] allegations against Wroblewski, he was placed on administrative leave and later fired." (Defs.' Mot. at 16-17.) With respect to Doe's second Title IX claim, Defendants argue that Doe's claim is legally flawed because (1) she bases it on incidents that occurred off school property when Wroblewski was no longer an SHHS employee, (2) the District was not required to provide her with mental health counseling, and (3) the District acted reasonably and provided appropriate support to Doe. (*See id.* at 18.)

For the reasons that follow, the Court denies Defendants' motion for summary judgment as to Doe's Title IX claims.

1.    **Count One: Deliberate Indifference to Sexual Discrimination, Harassment, or Abuse**

There is no question—and the parties do not dispute—that a teacher's sexual harassment or abuse of a student qualifies as discrimination based on sex under Title IX. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 281 (1998) ("Unquestionably, Title IX placed on the [school district] the duty not to discriminate on the basis of sex, and when a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor discriminates on the basis of sex . . . the same rule should apply when a teacher sexually harasses and abuses a student.") (simplified). Further, the parties do not dispute that what Doe experienced was sufficiently severe and pervasive unreasonably to interfere with Doe's educational activities. Therefore, the only questions that remain are whether the District had actual knowledge of and was deliberately indifferent to the sexual harassment.

a.    **Actual Knowledge of Discrimination, Harassment, or Abuse**

"[A] damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond." *Id.* at 290.

As an initial matter, Defendants and Doe disagree on the required scope of knowledge that an "appropriate person" is required to have. Defendants claim that "there is no evidence that an appropriate person had actual knowledge that Wroblewski was harassing or sexually abusing [Doe]." (Defs.' Mot. at 16.) Doe argues that Defendants too narrowly construe the actual knowledge requirement to require knowledge of Wroblewski's abuse of Doe, when knowledge of Wroblewski's "substantial risk of abuse to students" is sufficient. (Pl.'s Opp'n Defs.' Mot. Summ. J. ("Pl.'s Opp'n") at 35.)

While the Ninth Circuit has "not yet resolved the precise boundaries of the 'actual notice' component of a Title IX claim[,]" several prior decisions within the circuit support Doe's argument that Defendants too narrowly construe the required scope of knowledge that Title IX requires an appropriate person to have. These courts have relied on the Supreme Court's *Gebser* opinion and held that actual knowledge is not "plaintiff specific[,]" rather, actual knowledge "is satisfied once an appropriate official had actual knowledge of a substantial risk of abuse of students, whether or not directed at [the p]laintiff specifically." *Roe ex rel. Callahan v. Gustine Unified Sch. Dist.*, 678 F. Supp. 2d 1008, 1030 (E.D. Cal. 2009) (citations omitted); *S.T. v. Yakima Sch. Dist*. No. 7, No. 11-cv-3085-TOR, 2013 WL 807197, at *7 (E.D. Wash. Mar. 5, 2013) (acknowledging that the Ninth Circuit has not yet resolved the scope of knowledge required for a Title IX claim but agreeing with other courts in the circuit and finding that "the test is whether the appropriate official possessed enough knowledge of the harassment that he or she reasonably could have responded with remedial measures to address the kind of harassment upon which plaintiff's legal claim is based"); *D.G. v. Tucson Unified Sch. Dist.*, CV1800583TUCJGZMSA, 2020 WL 7041348, at *7 (D. Ariz. Nov. 30, 2020), *reconsideration denied*, 2021 WL 1087419 (D. Ariz. Feb. 26, 2021) ("*Gebser* does not hold that the actual knowledge requirement means that the notice to the school district must be 'notice of the prior harassment of the Title IX plaintiff *herself*'" (citing *Doe v. Sch. Bd. of Broward Cnty.*, 604 F.3d 1248, 1257 (11th Cir. 2010))); *Douglas v. Stalmach*, No. 213CV02326RFBPAL, 2016 WL 4479538, at *7 (D. Nev. Aug. 24, 2016) (denying motion for summary judgment and finding that "a reasonable jury could find [the d]efendants had actual notice of [the coach's] substantial risk of abuse" because the defendants were "repeatedly notified and aware of [the coach's] alleged pattern of sexual harassment of young women beginning in 2007 until he resigned in 2012 and

therefore had actual notice of a substantial risk of abuse based on prior complaints as required under Title IX"); *see also Sch. Bd. of Broward Cnty.*, 604 F.3d at 1257 ("[N]o circuit has interpreted *Gebser*'s actual notice requirement so as to require notice of the prior harassment of the Title IX plaintiff *herself*.") (collecting cases); *Escue v. N. OK Coll.*, 450 F.3d 1146, 1153 (10th Cir. 2006) (interpreting the Supreme Court's holding in *Gebser* as implicitly holding that "harassment of persons other than the plaintiff may provide the school with the requisite notice to impose liability under Title IX" and noting that "the actual notice standard does not set the bar so high that a school district is not put on notice until it receives a clearly credible report of sexual abuse from the plaintiff-student"); *Johnson v. Galen Health Institutes, Inc.*, 267 F. Supp. 2d 679, 688 (W.D. Ky. 2003) ("Actual knowledge of intentional discrimination and actual knowledge of the actual plaintiff's experiences are two different things; requiring the latter imposes a substantially higher test than the former [and c]onsistent with the majority of other courts . . . the actual notice standard is met when an appropriate official has actual knowledge of a substantial risk of abuse to students based on prior complaints by other students.").

Consistent with these well-reasoned authorities, the Court concludes that Doe must demonstrate that an appropriate person had actual knowledge that Wroblewski posed a substantial risk of abuse to students, not actual knowledge of the risk Wroblewski posed to Doe specifically.

### b.    Appropriate Person

An "appropriate person" under Title IX is, "at a minimum, an official of the [school district] with authority to take corrective action to end the discrimination." *Roe ex rel. Callahan*, 678 F. Supp. 2d at 1033. The record demonstrates that several "appropriate persons" had actual knowledge of the substantial risk of abuse Wroblewski posed here.

PAGE 17 – OPINION AND ORDER

Aguirre was an SHHS administrator from 2008 to 2017. (*See* Aguirre Depo. at 8:16-25, 16:14.) Aguirre testified that beginning in 2008, "there were several instances where students were reporting that [Wroblewski] was inappropriate, [] they came to us and told us things[.]" (*Id.* at 16:20-22.) Those "things" included that Wroblewski was smelling girls, allowing girls to sit behind his desk, making sexually inappropriate comments that offended students, "the list goes on and on." (*Id.* at 16:23-17:1.) Despite Wroblewski already having "a letter in his file" about inappropriate conduct, "over [twenty]" students complained about Wroblewski's conduct to Aguirre in 2008. (*Id.* at 17:6-22.) Aguirre also testified that in 2015, she informed Stockwell of Wroblewski's past inappropriate behavior toward female students. (*Id.* at 36:17-25, 37:-21.)

Tobin was an SHHS administrator who received several complaints about Wroblewski's conduct from students. (Crew Decl., Ex. 13, Depo. Joanna Tobin ("Tobin Depo.") at 15:7-15.) Between December 2007 and April 2008, Tobin had three separate conversations with Wroblewski about his conduct, culminating with Tobin issuing the Letter of Directive to Wroblewski in April 2008. (*Id.* at 19:8-21.)

Hagen was an administrator at SHHS who issued a written reprimand to Wroblewski following an investigation into "three complaints about [Wroblewski's] conduct and relationship with students." (Crew Decl., Exs. 4, 8.) Hagen filed a complaint with TSPC because "they" had "tried to take numerous steps to curb [Wroblewski's] behavior with reprimands, expectations, [and] time off without pay" but his conduct continued. (*Id.* at 24:25-25:9, 25:11-22.)

Testimony from administrator Adams confirms that both Tobin and Hagen brought their concerns about Wroblewski to her attention in 2008 and 2009. (Crew Decl., Ex. 15, Depo. Patricia Adams ("Adams Depo.") at 13:3-7.) Adams recalled having a meeting with Wroblewski where Wroblewski was told "[y]ou're not going to do this again." (*Id.* at 34:12-13.)

Defendants do not deny that Aguirre, Tobin, Hagen, Adams, and Stockwell are appropriate persons who had "authority to address the alleged discrimination and to institute corrective measures[.]" *Gebser*, 524 U.S. at 290. The Court therefore finds a reasonable jury could conclude that the District had actual knowledge that Wroblewski posed a substantial risk of abuse to students. *See Douglas*, 2016 WL 4479538, at *7 (denying motion for summary judgment on Title IX claim based on sexual abuse of a student beginning in 2011 because "a reasonable jury could find that [the defendant] had actual notice of [the teacher's] harassment of female students by virtue of the two 'knock it off' conversations in 2007 regarding his relationships with female students, as well as the text messages discovered between [the teacher] and [another student] in [] 2009").

### c.    Actual Knowledge of Wroblewski's Abuse of Doe

Even if the Court limited its inquiry to Defendants' narrow focus on whether an appropriate person had actual knowledge of Wroblewski's sexual abuse of Doe specifically, there remains a question of fact as to whether the District had actual notice of the abuse.

After Wroblewski was arrested, police interviewed Garratt Tayler, a teacher at SHHS, on May 4, 2018, and he informed the officer that "other teachers had made reports to the [D]istrict in the past" about the relationship between Doe and Wroblewski. (Crew Decl., Ex. 67.) Further, the record demonstrates that Arnold received reports from students that Wroblewski and Doe were involved in a "romantic or sexual relationship."[7] (Temple Decl. ¶ 20, testifying that in

---

[7] While the record demonstrates that additional teachers and staff were also aware of Wroblewski acting inappropriately toward Doe, evidence that several mandatory reporters had actual knowledge of inappropriate conduct between Wroblewski and Doe does not necessarily establish that "a school official with authority to address the alleged discrimination and institute corrective measures on the school's behalf had actual knowledge of the harassment." *Lyons v. Mesa Pub. Sch. Dist.*, No. CV-19-05880-PHX-GMS, 2021 WL 4478398, at *4 (D. Ariz. Sept.

"January or February of 2018," she "spoke with SHHS activities director Tonya Arnold about

my concerns regarding the relationship between [] Wroblewski and [Doe] and my concern that

they may have been engaged in a romantic or sexual relationship"; Decl. Jayden Alexander

("Alexander Decl.") ¶ 9, classmate of Doe testifying that "[n]ear the start of the 2017-2018

school year, I went with one of my peers and met with [SHHS] administrator Tonya Arnold [and

d]uring that conversation, I informed [] Arnold about the concerns regarding the unusually close

relationship between [] Wroblewski and [Doe]"; Crew Decl., Ex. 18, Depo. Tonya Arnold

("Arnold Depo.") at 61:23-67:16, testifying that two students had reported to her that "they

thought that the relationship between [Wroblewski] and [Doe] was close"). Arnold did not

inform anyone about these reports. (*See id*. at 67:12-16.)

Defendants argue that "[n]either Tonya Arnold nor the other non-administrative

employees identified in [Doe's] Response are 'appropriate persons' for the purpose of Title IX."

(Defs.' Reply at 4.) Focusing on Arnold, Defendants rely on Oregon administrative rules to

argue that because Arnold did not have her administrative license, she did not have authority to

take corrective action to end the abuse. (Defs.' Reply at 6.)

The Court finds that there is sufficient evidence in the record for a reasonable jury to

conclude that Arnold had authority to take corrective action here. Arnold's official role at SHHS

during the relevant period was "Activities Director[, Advancement via Individual Determination

("AVID")] coordinator and AVID District Director." (Arnold Depo. at 10:13-22.) Arnold was

working on her administrative credentials for state licensing, "served on a leadership team" in

her role as Activities Director, and worked with student body leaders as a "leadership teacher."

30, 2021) ("[O]bligations as a mandatory reporter do[es] not render [a teacher] a person with authority to act.") (citation omitted).

(*Id*. at 11:11-12:7.) Arnold's role was to "guide and facilitate [the SHHS] student body and all student body officers in providing programming for the school." (*Id*. at 12:10-12.) In a March 2018 TSPC form, Arnold's "position held" is identified as "Administrator" and the SHHS Superintendent signed off on that designation. (Crew Decl., Ex. 64 at 2.) In fact, students who had concerns about Wroblewski and Doe's relationship sought out Arnold because of her leadership role, assuming she was an administrator. (*See, e.g*., Alexander Decl. ¶ 9, identifying Arnold as an "administrator").

This evidence underscores other courts' observations that "school districts contain a number of layers . . . superintendents, principals, vice-principals, and teachers and coaches, not to mention specialized counselors such as Title IX coordinators[, and d]ifferent school districts may assign different duties to these positions or even reject the traditional hierarchical structure altogether." *Roe ex rel. Callahan*, 678 F. Supp. 2d at 1034 (citing *Rosa H. v. San Elizario Indep. Sch. Dist*., 106 F.3d 648, 660 (5th Cir. 1997)). "Because officials' roles vary among school districts, deciding who exercises substantial control for the purposes of Title IX liability is necessarily a fact-based inquiry." *Id*.; *see also Murrell v. Sch. Dist. No. 1, Denver, Colo*., 186 F.3d 1238, 1247 (10th Cir. 1999) (same).

On the current record and viewed in the light most favorable to Doe, there is a genuine dispute of material fact regarding whether Arnold—who possessed actual knowledge of the inappropriate relationship between Doe and Wroblewski—was an appropriate person under Title IX. For these reasons, the Court finds that a reasonable jury could conclude that appropriate persons at the District had actual knowledge of Wroblewski's sexual abuse of Doe.

///

///

####      d.      Deliberate Indifference

Having determined that there remains a fact dispute regarding whether the District had actual knowledge of discrimination, the Court turns to whether the District acted with deliberate indifference such that the District is liable under Title IX for Wroblewski's sexual harassment and abuse of Doe.

In the Ninth Circuit, an educational institution's response to sexual harassment is not actionable under Title IX unless it is "clearly unreasonable in light of the known circumstances[.]" *Oden v. N. Marianas Coll.*, 440 F.3d 1085, 1089 (9th Cir. 2006) (citing *Davis*, 526 U.S. at 648-49). "Under this standard, if an institution takes timely and reasonable measures to end the harassment, it is not liable under Title IX for prior harassment." *Takla v. Regents of the Univ. of Cal.*, No. 2:15-cv-04418-CAS(SHx), 2015 WL 6755190, at *5 (C.D. Cal. Nov. 2, 2015) (citation omitted). By contrast, an institution is liable if it "either fails to act, or acts in a way which could not have reasonably been expected to remedy the violation[.]" *Id.* (citation omitted). In short, the District is liable only if a reasonable jury could conclude that it "made an official decision not to remedy the violation." *Oden*, 440 F.3d at 1089 (quoting *Gebser*, 524 U.S. at 290) (simplified).

The record demonstrates that the District had actual knowledge of Wroblewski acting inappropriately toward female students as early as 2005. (Hagen Depo. at 48:4-10.) As previously discussed, Wroblewski continued to act inappropriately toward female students even after SHHS administrators attempted to stop his behavior. District administrators repeatedly warned Wroblewski that, *inter alia*, he was to have no physical contact with students, and that students were not allowed around his desk or computer space. (Crew Decl., Ex. 5.) Wroblewski admitted his continued inappropriate conduct to administrators when questioned and told

administrators that he "didn't know how to stop." (Hagen Depo. at 60:2-18; Crew Decl., Ex. 7.)

Administrators were concerned with Wroblewski's "pattern" and believed he could not discern

what was an appropriate teacher/student relationship. (*Id*. at 61:9-22; Crew Decl., Ex. 7.)

Administrators also believed that allowing Wroblewski to be a track coach "left too many

opportunities for him to be . . . unsupervised with students." (*Id*. at 61:9-15.)

Despite years of substantiated reports of misconduct from dozens of students,

Wroblewski's admissions that he couldn't stop his behavior, and an administrator's call for his

termination, the extent of Wroblewski's actual discipline was a one-day suspension. (*See*

Wroblewski Depo. at 37:6-38-6.) Viewing the evidence in the light most favorable to Doe, a

reasonable jury could conclude that the District acted with deliberate indifference. *See Oden*, 440

F.3d at 1089. Accordingly, the Court denies Defendants' motion for summary judgment on

Doe's first Title IX claim.

### 2.    Count Two: Failure to Take Remedial or Corrective Action

Doe also claims that the District is liable for the further trauma she experienced following

Wroblewski's arrest because the District's "meager response" was "clearly unreasonable." (Pl.'s

Opp'n at 52.) Specifically, Doe argues that the District "fail[ed to] monitor[] staff, set[] policies,

[or] provide remedial services to [Doe] after Wroblewski's firing and arrest." (*Id*.)

"To fulfill its Title IX obligations, a federally-funded school 'may be required to provide

other services to the student who was harassed if necessary to address the effects of the

harassment on that student[.]'" *S.G. v. San Francisco Unified Sch. Dist*., No. 17-CV-05678-

EMC, 2018 WL 1876875, at *7 (N.D. Cal. Apr. 19, 2018) (citation omitted); *see also Doe by

Watson v. Russell Cnty. Sch. Bd*., 292 F. Supp. 3d 690, 709-10 (W.D. Va. 2018) ("The premise

of a [recipient entity's] liability under Title IX 'is an official decision by the recipient not to remedy the violation.'" (citing *Gebser*, 524 U.S. at 290)).[8]

The record before the Court demonstrates that following Wroblewski's arrest, Doe returned to SHHS for her senior year. (Doe Depo. at 134:8-11.) Doe once again ran on the track team. (Doe Depo. at 129:9-19, when asked whether Doe went back to track, Doe responded, "Yes, I did [because] I wanted something to be normal.") Relevant to her claim, Doe faced comments and negativity from some track coaches who blamed Doe for the sexual abuse, leaving her to feel "upset and discouraged." (Doe Decl. ¶ 18.) In addition, when Doe asked a school counselor to request that SHHS teachers remove photos from their walls that depicted Wroblewski, one teacher refused. (*Id*. ¶ 17.) Doe further argues "that the district took no measures to prevent [Doe] from encountering Wroblewski's wife (a teacher at SHHS) at school." (Pl.'s Opp'n at 54.) These circumstances caused Doe to be "in a constant state of fear, confusion, and anxiety" for "several months." (*Id*.) Doe also argues that the District failed to offer her counseling and "chose to do nothing" despite knowing that Doe "would be in a severely distressed and fragile state following her abuser's arrest." (*Id*. at 54-55.)

---

[8] The District argues that "*S.G.* is arguably no longer good law on this issue." (Defs.' Reply at 10.) The District claims that the U.S. Department of Education ("DOE") has withdrawn its guidance on providing counseling to student abuse victims that was at issue in *S.G.*, and the Ninth Circuit held in *Karasek* that "a plaintiff does not have a cause of action under Title IX for an alleged failure to follow [DOE] guidance." (*Id*., citing *Karasek v. Regents of Univ. of Cal.*, 956 F.3d 1093 (9th Cir. 2020)). The Court does not read Doe's claims or *Karasek's* holding so narrowly. Rather, as another district court has explained, "[t]he *Karasek* court [] explained that violations of school policies, 'standing alone, will not constitute deliberate indifference,' but they may be relevant." *Torres v. Sugar-Salem Sch. Dist. #322*, No. 4:17-cv-00178-DCN, 2020 WL 5709283, at *5 (D. Idaho Sept. 24, 2020) (denying reconsideration of entry of summary judgment in favor of student and concluding that the *Karasek* decision "does not change the [c]ourt's [prior] conclusion" (citing *Karasek*, 956 F. 3d at 1108)). Thus, the test remains whether the District's "response to the harassment or lack thereof [was] clearly unreasonable in light of the known circumstances." *Karasek*, 956 F.3d at 1105.

Further, Doe testified that after Wroblewski's abuse of Doe became public, "no one from the school explained . . . that the abuse was not [her] fault, that [she] had been exploited, or that [she] was the victim." (Doe Decl. ¶ 15.) Doe "remained confused about what had happened" and wondered if "Wroblewski really cared about [her]." (*Id.*) Doe also testified that the District "did not take any active measures to integrate [her] back into the school[,]" that she felt "upset and discouraged[,]" and that Wroblewski's arrest "was very overwhelming for [Doe] and [her] family" to the point that "immense strain [and] stress caused [] fighting to become so bad that [Doe] was placed in foster care." (*Id.* ¶¶ 16, 18-19.)

The District asserts that after Wroblewski's arrest and before Doe's senior year began, one of Doe's teachers emailed Doe's stepfather to check on Doe, and informed Doe's family that the teacher would be "working with [the SHHS] Administration Team on creating a core group of parent, community, and professional mental health advocates in support . . . to ensure that we, as a staff, begin addressing th[e] crucial area of supporting kids." (Crew Decl., Ex. 47.) Doe's mother and stepfather responded that Doe was "doing much better and looking forward to the school year." (*Id.*) They also informed SHHS staff that Doe "ha[d] been going to counseling appointments and it seems to be helping . . . [and she] is surrounded with many people who love her[.]" (*Id.*) Further, following Wroblewski's arrest, Zehr worked with Doe, Doe's mother and sister, and a school counselor to "help to support [Doe's] academics while [Doe] was at home, and . . . to help support [Doe] for the summer [before her senior year] if [Doe] came back to school [the] next year." (Vickers Decl., Ex. 10, Depo. Ted Zehr ("Zehr Depo.") at 59:5-19.)

Despite the evidence that the District did more than "nothing" for Doe in the aftermath of Wroblewski's abuse, the Court finds that viewing the record in the light most favorable to Doe, a reasonable jury could conclude that the District's response to Doe's needs following

Wroblewski's arrest was otherwise "clearly unreasonable." *Watson*, 292 F. Supp. 3d at 710
(denying motion for summary judgment and finding that a "jury could conclude that [the
defendant] acted with deliberate indifference to [the teacher's] confessed abuse of [the plaintiff]
by failing to offer counseling or other remedial measures" and noting that the plaintiff's mother's
"testimony that [the plaintiff] does not currently want to undergo counseling at best creates a
factual dispute [because the plaintiff] himself testified that he does wish to receive counseling,
and in any event, [his] statements or wishes regarding counseling would not have prevented the
[defendant] from offering it"); *see also S.G.*, 2018 WL 1876875, at *7 (denying motion to
dismiss and holding that, as alleged, "a reasonable person could conclude that the [school
district's] failure to take corrective action . . . was 'clearly unreasonable'" where, *inter alia*, the
school district "did not offer counseling services to [the plaintiff] or even assess whether she
needed them" nor did it "offer [the plaintiff] counseling or other support services to mitigate the
harm of the harassment despite marked and apparent changes to her personality, demeanor, and
emotional well-being"); *cf. Oden*, 440 F.3d at 1087 (affirming entry of summary judgment for
the defendant college on Title IX claim where following the student's abuse allegations, the
college, *inter alia*, assigned two counselors to the student "to provide psychological and practical
support; they met with her more than a dozen times; they assisted her in filing a formal
complaint; and they helped her drop [the abuser's] class immediately").

Accordingly, the Court denies Defendants' motion for summary judgment on Doe's Title
IX claim for failure to take remedial or corrective action.

### B.    Section 1983 Claims

Doe alleges, *inter alia*, that Defendants exposed Doe to Wroblewski's "long-known and
ongoing pattern of [g]rooming, boundary violations, and overtly predatory behavior" and that

Defendants' deliberate indifference caused Doe to suffer "numerous acts of sexual abuse by Wroblewski" which "deprived [Doe] of her [c]onstitutionally protected Fourteenth Amendment interest in bodily integrity and security from violation by state actors." (FAC ¶¶ 57-63.)

Section 1983 provides a private right of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. To succeed on a Section 1983 claim, "a plaintiff [1] must allege the violation of a right secured by the Constitution and laws of the United States, and [2] must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "The Due Process Clause of the Fourteenth Amendment to the United States Constitution guarantees citizens the right to be free from 'state-imposed violations of bodily integrity,' including sexual abuse by state employees." *Rew v. LaGrande Sch. Dist.*, No. CV 02-891-BR, 2004 WL 1698166, at *4 (D. Or. July 29, 2004) (citing *Plumeau v. School Dist. # 40 of Yamhill Cnty.*, 130 F.3d 432, 438 (9th Cir. 1997)).

### 1.    Constitutional Right

Doe alleges, and Defendants do not dispute, that Doe has a constitutionally protected right to bodily integrity and to be free from sexual abuse. (FAC ¶ 65.) "A public school student has a liberty interest in his or her bodily integrity protected by the due process clause of [the] Fourteenth Amendment." *Plumeau*, 907 F. Supp. at 1435. "[A] liberty interest in bodily integrity includes freedom from sexual abuse." *Id*. at 1436.

### 2.    Deprivation Under the Color of State Law

"After establishing a deprivation of a federally guaranteed right, a plaintiff also must establish that the deprivation took place under color of a statute, ordinance, regulation, custom, or usage, of a State in order to pursue a claim under Section 1983." *Id*. at 1436 (simplified). Doe

alleges that the District, as well as Zehr and Stockwell in their individual capacities, are liable for the sexual abuse she suffered.

"Generally, . . . state actors may only be held liable under [Section] 1983 for their own acts, and not for the violent acts of third parties." *Rew*, 2004 WL 1698166, at *4 (citation omitted). "[A] state's failure to protect an individual from private violence simply does not constitute a violation of the Due Process Clause." *Id.* (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Serv.*, 489 U.S. 189, 197 (1989)). Two exceptions to this rule are the "danger-creation" exception (*id.*), and "*Monell*" liability. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978) (municipal liability). Doe alleges due process claims against the District based on state-created danger and *Monell* liability, and against Zehr and Stockwell in their supervisory capacities.

### a.    State-Created Danger

"A state may be held liable under the Due Process Clause for its omissions when the state affirmatively places the plaintiff in danger by acting with deliberate indifference to a known or obvious danger." *Pozos Leon v. Tillamook Cnty. Sch. Dist.*, No. 3:17-440-PK, 2018 WL 2175949, at *10 (D. Or. May 11, 2018) (simplified). "The state must have engaged in affirmative conduct that placed the plaintiff in danger, and this conduct must have placed the plaintiff in a worse position than if the state had not acted at all." *Id.* (citing *Pauluk v. Savage*, 836 F.3d 1117, 1125 (9th Cir. 2016)). "The affirmative act must have exposed the plaintiff to an actual, particularized danger and the resulting harm must have been foreseeable." *Id.* (citing *Pauluk*, 836 F.3d at 1125). "Additionally, the state 'must have acted with deliberate indifference to a known or obvious danger.'" *Id.* (quoting *Pauluk*, 836 F.3d at 1125).

Doe alleges that the District acted with deliberate indifference by exposing her to Wroblewski's "long-known and ongoing pattern of [g]rooming, boundary violations, and overtly predatory behavior toward the District's female students." (FAC ¶ 57.) Defendants argue that the state-created danger theory does not apply here because Wroblewski was a state actor, his danger was not specific to Doe, and the record does not support a finding that the District had actual knowledge of Wroblewski's sexual abuse of Doe. (Defs.' Mot. at 14-15.)

First, Defendants argue that Doe's claims under the "so-called state created danger theory . . . do[] not apply because Wroblewski was a state actor." (Defs.' Mot. at 14.) However, the Tenth Circuit case on which Defendants rely does not apply here. (*See id.*, citing *Moore v. Guthrie*, 438 F.3d 1036 (10th Cir. 2006)). In *Moore*, the Tenth Circuit affirmed the district court's dismissal of a Section 1983 claim brought by a police officer who was injured by another police officer during a training exercise. *See Moore*, 438 F.3d at 1042. The court acknowledged that the "danger creation doctrine makes a state official liable for the private violence of a third party" but held that the state-created danger theory "does not apply when the injury occurs due to the action of another state actor." *Id.* (citation omitted). In other words, "no danger creation claim could lie because the plaintiff's injury was the result of a bullet shot 'by a fellow police officer and not a private third party' and therefore there was no 'private violence' because the circumstances involved a sponsored training exercise and another police officer." *J.M. ex rel. Morris v. Hilldale Indep. Sch. Dist. No. 1-29*, 397 F. App'x 445, 458 (10th Cir. 2010) (summarizing the court's holding in *Moore*).

The Tenth Circuit later held that *Moore* does not apply in the context of a school sexual abuse case, because such cases "stand in stark contrast to the facts in *Moore*—there was a 'private' activity—an inappropriate relationship with a student." *Id.*; *see also Gray v. Univ. of*

PAGE 29 – OPINION AND ORDER

*Colo. Hosp. Auth.*, No. 09-cv-02458-MSK-KLM, 2010 WL 3430785, at *3 (D. Colo. Aug. 30, 2010), *aff'd*, 672 F.3d 909 (10th Cir. 2012) (finding that *Moore* "should not be read literally to restrict the application of the 'danger creation' theory to circumstances where the victim is injured by 'violence' caused by 'third parties' because, *inter alia*, that "interpretation of *Moore* . . . would be inconsistent with jurisprudence inside and outside the 10th Circuit").

Setting aside Tenth Circuit cases, "[t]he Ninth Circuit's 'state-created danger' cases . . . contemplate § 1983 liability for the state actor who, though not inflicting plaintiff's injury himself, has placed plaintiff in the harmful path of a third party not liable under § 1983." *L.K.M. v. Bethel Sch. Dist.*, No. C18-5345 BHS, 2020 WL 7075209, at *6 (W.D. Wash. Dec. 3, 2020) (quoting *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1082 (9th Cir. 2006)); *see also Sawyer for Est. of Sawyer v. Cent. Or. Cmty. Coll.*, No. 6:17-cv-1150-JR, 2018 WL 2946417, at *3 (D. Or. Apr. 5, 2018), *findings and recommendation adopted*, 2018 WL 2946396 (D. Or. June 11, 2018) ("[T]his circuit has held state officials liable, in a variety of circumstances, for [the state's] roles in creating or exposing individuals to danger they otherwise would not have faced.").

Ninth Circuit law is clear that the state-created danger exception applies where, as here, a student seeks to hold a school district liable for the misconduct of school personnel. *See Herrera v. Los Angeles Unified Sch. Dist.*, 18 F.4th 1156, 1158 (9th Cir. 2021) (applying the state-created danger exception to a Section 1983 claim against a school district and district employees by parents of a student who drowned on a school field trip); *see also Achcar-Winkels v. Lake Oswego Sch. Dist.*, No. 3:15-cv-00385-ST, 2015 WL 5522042, at *1 (D. Or. Sept. 16, 2015) (applying state-created danger exception to claim brought by parents of hazing victim against the school district, staff members, and volunteers).

Second, Defendants argue that "state created danger liability only applies when a plaintiff attempts to hold state actors responsible for directly placing a specific individual—not the general public—in a position of danger[.]" (Defs.' Mot. at 14.) Even assuming, *arguendo*, that state created danger liability does not apply here because Wroblewski posed a danger to everyone, not just Doe, Defendants' argument lacks merit because Doe has raised a triable issue of fact as to whether the District placed Doe in a position of danger, as opposed to the student body at large.

The record reflects that after SHHS administrators and staff became aware of Doe's mental health struggles, they "directed [Doe] to [] Wroblewski as a support and resource." (Doe Decl. ¶ 5.) Wroblewski was "kept in the loop" and Doe was directed to go to Wroblewski for support, including after suffering panic attacks at school. (*Id*.) Wroblewski was present without objection by administrators for Doe's sessions with SHHS counselors. (*Id*.) In the summer before her junior year, Wroblewski urged Doe to register for two of his classes and to apply to be his TA for both classes. (*Id*. ¶ 7.) With the approval of school administrators, Doe was assigned as the TA for both classes. (*Id*.) As her struggles continued, Wroblewski was understood to be Doe's "safe person" at the school, his classroom her "safe place," and she would often go to Wroblewski's classroom, even when she was supposed to be attending other classes, to sit next to him at his desk or sleep under his desk. (*See* Wroblewski Depo. at 52:1-3, 58:12-21, 60:24-61:1, 74:18-75:1, 76:8-9, 76:16-77:3; Crew Decl., Exs. 45, 80; Doe Decl. ¶¶ 5, 8.)

Despite the District's knowledge of Wroblewski's history with female students, the District designated him as a "safe person" for Doe when she was struggling with mental health issues, allowed him to attend her counseling sessions, kept him in the loop about Doe's struggles, approved Doe as his TA, and allowed Doe to sleep under his classroom desk. There is a triable

issue as to whether the District's actions placed Doe in a dangerous situation. *See Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1087 (9th Cir. 2000) (reversing district court's grant of summary judgment for the defendant and finding that "[a]s a result of the affirmative acts of the [defendants], the danger or risk of injury to [the plaintiff] was greatly increased").

Finally, Defendants argue that Doe makes only "a formulaic recitation of the elements" and "the record is insufficient to hold [D]efendants liable for Wroblewski's intentional criminal conduct" because, *inter alia*, "[D]efendants had no actual knowledge that Wroblewski had committed sexual abuse" and "Wroblewski was given progressive discipline for his conduct." (*Id*. at 15.) However, as discussed above, there is a triable issue with respect to whether Defendants had actual knowledge of Wroblewski's sexual harassment and abuse of Doe.

On this record, a reasonable jury could conclude that the District knew Wroblewski presented a danger to female students, and despite that knowledge, placed Doe in danger. Accordingly, the Court denies Defendants' motion for summary judgment as to Doe's Section 1983 state-created danger claim.

### b.    *Monell* Claim

Doe also alleges a *Monell* "policy or custom" claim against the District. "[L]iability based on a 'policy or custom' may be established in three ways: (1) by governmental policy statements, ordinances, regulations, or decisions officially adopted and promulgated[;] (2) by [] practices which, although not authorized by any formally adopted decision, are so permanent and well settled as to constitute a 'custom or usage' with the force of law []; or (3) by a failure to train which amounts to deliberate [] indifference[.]" *Plumeau*, 907 F. Supp. at 1436-37.

Doe alleges in her FAC that the District's liability is based on its informal policies, failure to train, and failure to supervise. In her opposition to Defendants' motion, Doe explains

that she bases her *Monell* claim on the District's "deliberate, longstanding practice of failing []

adequately [to] safeguard students' [c]onstitutional rights against a known, ongoing, danger of

sexual abuse by Wroblewski." (Pl.'s Opp'n at 70.) Doe argues that the District's "consistent

'failure to train' staff, students, and parents . . . is but one indicia of the District's near decade-

long practice to do *nothing* about Wroblewski's known sexual dangerousness." (*Id*. at 70-71.)

### 1)    Informal Policies or Customs

"Generally, to succeed on a *Monell* claim under this theory, the custom or practice must

be so persistent and widespread that it constitutes a permanent and well settled policy." *Rollins v.*

*McMinnville Sch. Dist*. 040, No. 3:20-cv-00900-HZ, 2021 WL 5611318, at *12 (D. Or. Nov. 27,

2021) (simplified). "Liability for improper custom may not be predicated on isolated or sporadic

incidents; it must be founded upon practices of sufficient duration, frequency and consistency

that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99

F.3d 911, 918 (9th Cir. 1996), *holding modified by Navarro v. Block*, 250 F.3d 729 (9th Cir.

2001). "Normally, the question of whether a policy or custom exists would be a jury question*."

Trevino*, 99 F.3d at 920.

Defendants argue that Doe's *Monell* theory fails for "lack of policies or evidence of

sufficient duration of various customs." (Defs.' Mot. at 10.) Defendants further argue that

liability under this theory cannot be based on "a collection of sloppy, or even reckless,

oversights[.]" (Defs.' Reply at 14, citing *Doe v. Claiborne Cnty.*, 103 F.3d 495, 508 (8th Cir.

1996)).

As previously discussed in the context of the District's actual knowledge of the risk

Wroblewski posed to students, the Court finds that a reasonable jury could conclude that the

District had a "persistent and widespread" practice of failing to protect female students from

Wroblewski's abuse such that the failure constitutes a "permanent and well settled" District custom or practice. The District was aware of Wroblewski's inappropriate conduct toward female students as early as 2005. (*See* Hagen Depo. at 48:4-10.) SHHS administrators received dozens of complaints from students about Wroblewski's conduct, which were substantiated. (*See, e.g.*, Crew Decl., Ex. 7; Aguirre Depo. at 17:17-22.) The District was aware that reprimands, directives, and expectations placed on Wroblewski were ineffective and that he "couldn't stop" his behavior. (Hagen Depo. at 60:2-18.) A reasonable jury could conclude that the District's repeated failure to prevent Wroblewski's inappropriate conduct toward students constituted a "custom or usage" such that the District is liable for Wroblewski's abuse of Doe.

### 2)    Failure to Train

"Failure to train may amount to a policy of 'deliberate indifference,' if the need to train was obvious and the failure to do so made a violation of constitutional rights likely." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). "Mere negligence in training. . . does not give rise to a *Monell* claim." *Id.* (citation omitted).

Defendants argue that the District cannot be liable under a failure to train theory because (1) the District provides training to its employees on child abuse prevention; (2) Doe does not specify how the training was insufficient or what would constitute training sufficient such that the District would have prevented the abuse; and (3) Doe cannot show that the District was deliberately indifferent or how the alleged lack of training could have been the moving force behind the alleged constitutional violations.[9] (*See* Defs.' Mot. at 9.)

---

[9] Defendants also argue that Doe's failure specifically to address Defendants' arguments with respect to training justifies entry of summary judgment on that theory. (Defs.' Reply at 13

Defendants are correct that there is evidence in the record demonstrating that the District provided SHHS with training regarding sexual abuse, grooming, and harassment. (*See* Adams Depo. at 43:7-21; Stockwell Depo. at 61:19-64, 76:23-78:25, 80:3-17; Zehr Depo. at 51:23-52:23; Crew Decl., Ex. 65.) However, Doe's allegation is not limited to an absolute failure to train, but rather she alleges the District had a custom or informal policy of failing to enforce the training that SHHS faculty and staff received. (*See* FAC ¶ 66.) With respect to Doe's theory, the record contains evidence that despite their training, teachers and staff members—including Arnold, SHHS counselor Kimmy Ross, band director Noelle Freshner, and SHHS staff member Caelish Tarrham—either witnessed or had students report to them that Wroblewski was acting inappropriately toward students, yet they did nothing. (*See, e.g.*, Decl. Hannah Temple ("Temple Decl.") ¶ 15, classmate of Doe testifying that "[d]uring [the 2017-2018 school year], I began to speak with various [SHHS] teachers and adult staff members to express my concerns about the relationship between [] Wroblewski and [Doe]"). Further, administrators knew that previous efforts to address Wroblewski's abuse were ineffective. (*See, e.g*., Hagen Depo. at 27:9-28:2, 29:19-20, 61:19-22; Stockwell Depo. at 57:10-15.) In light of this record, there remains disputed issues of fact regarding whether the District had notice that its training was deficient, whether it altered or improved its training in response, and whether the failure to train was the moving force behind the District's constitutional violations.

On the present record viewed in the light most favorable to Doe, a reasonable jury could conclude that the District acted deliberately indifferent with respect to training. *Watson*, 292 F. Supp. 3d at 710 (denying school district's motion for summary judgment and finding that "the

---

n.8.) The Court does not agree that Doe failed to address Defendants' argument. (*See* Pl.'s Opp'n at 53, 70.)

plaintiff [] produced sufficient evidence that the [d]efendants had notice of deficient training either based on past incidents of sexual misconduct against students by [] employees or because the need for training was obvious" including "evidence of past complaints and investigations" and noting that evidence in the record "would justify the conclusion that teachers and administrators overlooked numerous red flags and encouraged [the teacher's] relationship with [the student], which may have emboldened [the teacher] and intensified the abuse").

### 3)    Failure to Supervise

"[A] failure to supervise that is 'sufficiently inadequate' may amount to 'deliberate indifference.'" *Dougherty*, 654 F.3d at 900 (citing *Davis*, 869 F.2d at 1235). As discussed above, there is evidence in the record that the District was aware of Wroblewski's repeated inappropriate conduct, had previously found it necessary to discipline Wroblewski for past inappropriate conduct, believed Wroblewski posed a risk to female students, and yet the District failed to follow through on its acknowledged need to supervise Wroblewski more closely and monitor his interactions with female students. (*See* Crew Decl., Ex. 9; Hagen Depo. at 60:2-18, 61:19-22; Stockwell Depo. at 57:10-15); *cf. Doe v. Dickenson*, 615 F. Supp. 2d 1002, 1011 (D. Ariz. 2009) (granting the defendants' motion for summary judgment where "there [wa]s no evidence of [] a history or pattern in the record").

On the present record viewed in the light most favorable to Doe, a reasonable jury could conclude that the District's lack of supervision of Wroblewski amounts to deliberate indifference and caused Doe's abuse.

### 3.    Conclusion

For these reasons, the Court denies Defendants' motion for summary judgment on Doe's Section 1983 claim against the District.

###### C.    Claims against Zehr and Stockwell

To establish individual liability under Section 1983, an individual must personally participate in the alleged deprivation of the right. *See Avalos v. Baca*, 596 F.3d 583, 587 (9th Cir. 2010) (holding that to recover under Section 1983, the plaintiff must either demonstrate that the defendant personally participated in the alleged deprivation of rights or that the deprivation "was the result of a pattern or custom"). Where there is no allegation that the school official personally participated in the abuse, courts in this circuit have held that "[a] student can hold a supervisory school official liable for a subordinate's violation of the student's substantive due process right to bodily integrity against sexual abuse where she establishes: (1) the defendant learned of facts or a pattern of inappropriate sexual behavior by a subordinate pointing plainly toward the conclusion that the subordinate was sexually abusing the student; and (2) the defendant demonstrated deliberate indifference toward the constitutional rights of the student by failing to take action that was obviously necessary to prevent or stop the abuse; and (3) such failure caused a constitutional injury to the student." *Doe v. Benicia Unified Sch. Dist.*, 206 F. Supp. 2d 1048, 1053 (E.D. Cal. 2002) (citing *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 454 (5th Cir. 1994) (en banc)).

Defendants argue that Doe cannot show that Zehr or Stockwell had "actual knowledge of facts or a pattern of inappropriate behavior pointing plainly to the conclusion that Wroblewski was sexually abusing [Doe]." (Defs.' Mot. at 12.) Defendants also argue that "the record lacks evidence that Stockwell or Zehr acted with deliberate indifference." (*Id.*) Alternatively, Defendants argue that Stockwell and Zehr are entitled to qualified immunity. (*Id.* at 12-13.)

///

///

### 1. Zehr

The record before the court does not support Doe's allegation that Zehr had knowledge of Wroblewski's past inappropriate conduct.

Zehr's tenure as SHHS Principal began in January 2018. (Zehr Depo. at 27:4-7.) Zehr testified that the first time he learned of any problems with Wroblewski was when he "got a phone call from a parent" reporting that "a girl" went to Wroblewski's house. (*Id.* at 27:8-13.) Upon receiving the information, Zehr immediately investigated whether Wroblewski was present at the school, and confirmed he was not. (*Id.* at 27:14.) When Zehr confirmed Wroblewski was not on SHHS property, he spoke with the SHHS resource officer to share the information the parent had told him. (*Id.* at 27:13-16.) "[T]hat night, [] Wroblewski was arrested[.]" (*Id.* at 27:19.) "Prior to that, [Zehr] did not know anything was going on." (*Id.* at 23-24.)

Zehr also testified that prior to Wroblewski's arrest, he was not aware of any problems with Wroblewski. (*Id.* at 28:7-12.) When Zehr joined the SHHS administration, nobody informed him of any complaints, concerns, or suspicions about Wroblewski's prior conduct. (*Id.* at 28:14-17.) At oral argument, Doe's counsel acknowledged that there is no evidence in the record demonstrating that Zehr had knowledge of Wroblewski's prior conduct.

Accordingly, the Court grants Defendants' motion for summary judgment as to Doe's Section 1983 claim against Zehr in his individual capacity.[10]

### 2. Stockwell

In contrast, Doe has provided sufficient evidence to establish a triable issue of fact as to whether Stockwell had knowledge of Wroblewski's inappropriate conduct prior to Wroblewski's

---

[10] As a result, the Court does not address whether Zehr acted with deliberate indifference or is entitled to qualified immunity.

arrest for sexually abusing Doe. As previously discussed, Aguirre testified that she informed Stockwell in 2015 of her concerns about Wroblewski's past conduct. (*See* Aguirre Depo. at 36:17-25, 37:21.) Aguirre testified that she told Stockwell about her concerns with Wroblewski's lack of supervision, describing it as a "recipe for disaster." (*See id*. at 36:23-37:25.) Aguirre also expressed to Stockwell that she "didn't feel that [Wroblewski] was appropriate, that he had crossed boundaries before, and [she] felt like [Wroblewski] was potentially on his best behavior now, but [she] still [] did not feel [he was] safe." (*Id*. at 36:19-22.) Despite Stockwell's inability to recall this conversation, Aguirre's testimony creates a triable issue of fact as to Stockwell's knowledge of Wroblewski's past conduct and the risk Wroblewski posed to students.

Further, the record reflects that there remains a question of fact as to whether Stockwell "demonstrated deliberate indifference toward the constitutional rights of [Doe] by failing to take action that was obviously necessary to prevent or stop [Wroblewski's] abuse." *Taylor*, 15 F.3d at 454 ("[A] school official's liability arises only at the point when the student shows that the official, by action or inaction, demonstrates a deliberate indifference to his or her constitutional rights."); *Doe A. v. Green*, 298 F. Supp. 2d 1025, 1036 (D. Nev. 2004) ("In determining whether liability exists, this Court notes the Ninth Circuit's history of leaving the question of deliberate indifference to the jury." (citing *Oviatt By and Through Waugh v. Pearce*, 954 F.2d 1470, 1478 (9th Cir. 1992))).

Doe has presented sufficient evidence to demonstrate that Stockwell was informed in 2015 of Wroblewski's past misconduct and of an SHHS administrator's continued concerns sufficient to indicate to Stockwell that Wroblewski posed a substantial risk of abuse to students,

but Stockwell did nothing.[11] Viewing the record in the light most favorable to Doe, the Court

finds that a reasonable jury could conclude that Stockwell acted with deliberate indifference.

*Taylor*, 15 F.3d at 454; *cf. Maier ex rel. B.T. v. Canon McMillan Sch. Dist.*, No. CIV.A. 08-0154,

2009 WL 2591098, at *6 (W.D. Pa. Aug. 20, 2009) (granting motion for summary judgment for

school principal on the plaintiff's Section 1983 claim because "there [was] no evidence that

anyone brought any concerns regarding [the teacher] to [the principal] before" the principal

received telephone records from the student's mother demonstrating inappropriate behavior);

*S.T.*, 2013 WL 807197, at *8 (finding that a school district was not on notice of a substantial risk

of sexual harassment to students where the plaintiffs "offer[ed] no evidence that any student,

parent, or teacher reported an official complaint to any School District official of any sexual

misconduct by [the teacher]").

For these reasons, the Court denies Defendants' motion for summary judgment on Doe's

Section 1983 claim against Stockwell in his individual capacity.

### 3.    Qualified Immunity

Defendants alternatively argue that Stockwell is entitled to qualified immunity because

even if he had known about Wroblewski's prior misconduct, "no case clearly establishes that

[he] could be liable for his crimes where [] there was a ten year period intervening between the

prior inappropriate conduct and the conduct that forms the basis of [Doe's] claims." (Defs.' Mot.

at 14.)

"Qualified immunity shields government officials from civil damages unless an official

'violate[s] a clearly established constitutional right.'" *Andrews v. City of Henderson*, 35 F.4th

---

[11] Corroborating evidence in the record suggests that Stockwell had a "good ol' boy" relationship with Wroblewski. (*See* Aguirre Depo. at 35:10-36:6.)

710, 714-15 (9th Cir. 2022) (citing *Monzon v. City of Murrieta*, 978 F.3d 1150, 1156 (9th Cir. 2020)). "When an official acts as a reasonable officer believing his conduct was proper under the law, the official is immune from suit for that conduct." *Benicia*, 206 F. Supp. 2d at 1053 (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). "Officials, however, are not immune from violations when the liberty interest and the official's duty are clearly established." *Id.* (citing *Taylor*, 15 F.3d at 454).

Decades prior to Wroblewski's sexual abuse of Doe, the Ninth Circuit clearly established that public school students have a constitutional right to bodily integrity, including to be free from physical abuse by school employees. *See Ingraham v. Wright*, 430 U.S. 651, 674 (1977). In 1997, the Ninth Circuit interpreted that clearly established right to "encompass" the "right to be free from sexual abuse by school employees." *Plumeau*, 130 F.3d at 438; *see also Benicia*, 206 F. Supp. 2d 1053 ("The Constitution protects a child's right to be free from sexual abuse by school employees while attending public school."). Further, school officials' duties with respect to a violation of a student's right to be free from sexual abuse by school employees were clearly established as early as 1987. *See Benicia*, 206 F. Supp. 2d at 1054 ("[A] student's right to be free from sexual abuse and the duty of school officials regarding this right were established at least as early as 1987." (citing *Taylor*, 15 F.3d at 454)).

Despite this clear constitutional right, Defendants argue that "[n]o case clearly established that Stockwell [] can be liable on a supervisory theory for Wroblewski's intentional criminal conduct given what [Stockwell] knew about [Wroblewski] prior to the events that give

rise to this case."[12] (Defs.' Mot. at 14.) Specifically, Defendants argue no case clearly establishes supervisory liability where the previous inappropriate conduct of which the supervisor was aware was dated. (*Id*.)

Whether a right is clearly established at the time of the conduct at issue is an objective test. *See Backlund v. Barnhart* 778 F.2d 1386, 1389 (9th Cir. 1985). "[T]he plaintiff must show that the *particular facts* of his case support a claim of clearly established right." *Id*. However, "[t]his does not mean that the 'exact factual situation' of Doe's case must have been previously litigated." *Doe By & Through Doe v. Petaluma City Sch. Dist*., 54 F.3d 1447, 1450 (9th Cir. 1995) (citation omitted). "Specific binding precedent is not required to show that a right is clearly established for qualified immunity purposes." *Id*. (simplified). "Nevertheless, the contours of the clearly established right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id*. (simplified). The Ninth Circuit has "held that under § 1983 the qualified immunity defense is inapplicable whenever an official does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the [rights] deprivation." *Id*. (citation omitted).

Despite the absence of a case specifically addressing the exact factual scenario presented here, school officials, including Stockwell, have been on notice of their supervisory liability with respect to a teacher's sexual abuse of a student for a generation. *See Plumeau*, 130 F.3d at 438; *cf. T.E. v. Pine Bush Cent. Sch. Dist*., 58 F. Supp. 3d 332, 371 (S.D.N.Y. 2014) (rejecting the defendants' claims of qualified immunity and holding that while "[the d]efendants correctly note

---

[12] Having found that there are questions of fact as to Stockwell's knowledge of Wroblewski's past conduct, Defendants' argument fails to the extent they argue that Stockwell had no knowledge of Wroblewski's past conduct. (*See id*.)

the absence of a case in the Second Circuit holding an administrator individually liable under §

1983 for anti-Semitic student-on-student harassment[,]" a Second Circuit decision fifteen years

prior "provided administrators with notice of their liability with respect to racial discrimination

generally"). Doe's constitutional right to be free from sexual abuse by a teacher and Stockwell's

related duties as a school administrator were clearly established, regardless of the dates of

Wroblewski's prior misconduct, and Stockwell is not entitled to qualified immunity. *See Benicia*,

206 F. Supp. 2d at 1053-54 (finding school officials were not entitled to qualified immunity for

conduct alleged to have occurred several years prior because "a student's right to be free from

sexual abuse and the duty of school officials regarding this right were established").

## CONCLUSION

For the reasons discussed above, the Court resolves Defendants' motion for partial

summary judgment (ECF No. 45), as follows:

- GRANTS Defendants' motion for summary judgment on Doe's state law claims
  against Zehr and Stockwell for sexual battery of a child and intentional infliction
  of emotional distress;

- GRANTS Defendants' motion for summary judgment on Doe's claim for punitive
  damages under Oregon state law;

- GRANTS Defendants' motion for summary judgment on Doe's claims against the
  School Board;

- GRANTS Defendants' motion for summary judgment on Doe's Section 1983
  claims against Zehr and Stockwell in their official capacities;

- GRANTS Defendants' motion for summary judgment on Doe's claims for
  punitive damages under Section 1983 against the District;

- DENIES Defendants' motion for summary judgment on Doe's Title IX claims;

- DENIES Defendants' motion for summary judgment on Doe's Section 1983 state-created danger claim against the District;

- DENIES Defendants' motion for summary judgment on Doe's Section 1983 *Monell* claim against the District;

- GRANTS Defendants' motion for summary judgment on Doe's Section 1983 claim against Zehr in his individual capacity; and

- DENIES Defendants' motion for summary judgment on Doe's Section 1983 claim against Stockwell in his individual capacity.

**IT IS SO ORDERED.**

DATED this 27th day of March, 2023.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge

PAGE 44 – OPINION AND ORDER